NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 18-1241

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED** Jun 08, 2018 DEBORAH S. HUNT, Clerk |

FCA US LLC,                                                    )
                                                               )
          **Plaintiff- Appellant,**          )          ON APPEAL FROM THE
                                                               )          UNITED STATES DISTRICT
v.                                                             )          COURT FOR THE EASTERN
                                                               )          DISTRICT OF MICHIGAN
PATREA R. BULLOCK,                       )
                                                               )
          **Defendant-Appellee.**           )          **OPINION**
                                                               )

Before:  BATCHELDER, MOORE, and LARSEN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Plaintiff FCA US LLC ("FCA") appeals the district court's denial of a temporary restraining order ("TRO") enjoining Defendant Patrea Bullock ("Bullock") from disclosing any of FCA's confidential or proprietary information.  We **DISMISS** FCA's appeal for lack of appellate jurisdiction.

## I.  BACKGROUND

Bullock, a Californian attorney, previously worked at two law firms that represented automobile manufacturer FCA in California.  R. 1 (Compl. ¶¶ 7, 8, 9, 20, 21) (Page ID #2–3, 5). At these firms, Bullock spent hundreds of hours defending FCA in breach-of-warranty actions.  *Id.* ¶¶ 9, 21 (Page ID #3, 5).  FCA claims that Bullock obtained privileged, confidential information from FCA during this attorney-client relationship.  *Id.* ¶¶ 13, 15, 25, 26 (Page ID #3–4, 7). According to FCA, Bullock was heavily involved in its defense, and FCA contends that Bullock "personally determined and advised FCA US about how to respond regarding particular claims,

evaluated the defenses available to FCA US, developed overall defense strategy, and engaged in regular contact with FCA US regarding the defenses and strategies of various cases." *Id.* ¶ 11 (Page ID #3). For instance, Bullock defended depositions, drafted discovery responses, conducted vehicle inspections, engaged in settlement processes, and communicated with FCA's general counsel. *Id.* ¶¶ 12, 15, 16, 17 (Page ID #4–5). Bullock also participated in a training program that FCA hosted, and in order to attend the event, she executed a confidentiality agreement, which contained choice-of-law and choice-of-forum provisions. R. 1-2 (Compl. Ex. 1-A, Agreement) (Page ID #24).

In October 2017, however, Bullock opened her own law firm. R. 1 (Compl. ¶ 30) (Page ID #8). Shortly thereafter, in November 2017, Bullock filed a complaint for breach of warranty on behalf of a client against FCA in California state court. *Id.* ¶ 31 (Page ID #8). A few months later, in January 2018, Bullock filed another complaint in California state court for breach of warranty on behalf of clients against FCA. *See* R. 34-2 (Suppl. Br. Ex. A, Compl.) (Page ID #536). Subsequently, in February 2018, FCA received yet another complaint for breach of warranty from one of Bullock's clients. *See* R. 37-2 (Suppl. Notice Ex. A, Compl.) (Page ID #606).

Reacting to Bullock's conduct, FCA filed this action in the United States District Court for the Eastern District of Michigan. R. 1 (Compl.) (Page ID #1). In its complaint, FCA pleaded several claims: (1) breach of contract, (2) misappropriation of trade secrets, (3) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*, and (4) breach of fiduciary duty. *Id.* ¶¶ 36–66 (Page ID #9–13). In light of these allegations, FCA has requested injunctive relief and damages.

*Id.* ¶¶ 67–72 (Page ID #13–15). FCA also moved for a TRO in the district court to restrain Bullock from revealing confidential information, destroying records, and filing breach of warranty actions against FCA. R. 2 (Mot.) (Page ID #52). The district court denied FCA's motion. *See FCA US LLC v. Bullock*, No. 17-CV-13972, 2018 WL 1064536, at \*4 (E.D. Mich. Feb. 26, 2018). FCA appealed the district court's order denying the TRO. *See* R. 39 (Notice of Appeal) (Page ID #760).

## II. DISCUSSION

We have jurisdiction to review "[i]nterlocutory orders of the district courts . . . refusing . . . injunctions.'" 28 U.S.C. § 1292(a)(1). "In contrast, this court generally lacks jurisdiction to hear an appeal of the district court's decision to grant or deny a TRO." *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006) (first citing *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 473 U.S. 1301, 1303–04 (1985); and then citing *Leslie v. Penn Cent. R.R. Co.*, 410 F.2d 750, 752 (6th Cir. 1969)). "The rationale for this rule is that TROs are of short duration and usually terminate with a prompt ruling on a preliminary injunction, from which the losing party has an immediate right of appeal." *Id.*

However, the grant or denial of a TRO "may be appealed under section 1292(a)(1) if it has the practical effect of an injunction and 'further[s] the statutory purpose of 'permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Id.* (alterations in original) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). Thus, we have jurisdiction when the grant or denial of a TRO "threaten[s] to inflict irretrievable harms." *See id.* at 1005–06 (determining that we had jurisdiction because any harm from the TRO regarding

the enforcement of voting provisions during an election was irreparable); *see also Ohio Republican Party v. Brunner*, 543 F.3d 357, 360 (6th Cir. 2008) (concluding that we had jurisdiction to review a TRO regarding election procedures because of "the extraordinary time constraints"); *Workman v. Bredesen*, 486 F.3d 896, 904 (6th Cir. 2007) (holding that we had jurisdiction to review a TRO staying an execution).

As the district court noted when considering FCA's motion, FCA does not face irreparable consequences if it does not receive a TRO. *See FCA*, 2018 WL 1064536, at *3. Although Bullock's actions may be problematic, FCA can challenge her conduct in other forums, and this is not a case where a TRO acts as a preliminary injunction. For instance, in each action that Bullock has pursued against FCA, FCA can move to disqualify Bullock. In fact, the courts in those actions might be better suited to determine whether Bullock's conduct immediately endangers FCA. Additionally, as the district court observed, FCA "may contact the California bar" regarding Bullock's actions, and it could move for a preliminary injunction in this action. Because FCA can seek protection in other manners, the district court's denial of the TRO does not threaten to inflict irretrievable harm. Therefore, we do not have appellate jurisdiction over the district court's order denying a TRO.

### III. CONCLUSION

For the reasons discussed, we **DISMISS** FCA's appeal for lack of appellate jurisdiction.